## Commonwealth *v.* Shaffer et al., Appellants.

92

Argued November 8, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David E. Auerbach,* Assistant Public Defender, for appellants.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Ralph B. D'Iorio* and *J. Harold Hughes,* Assistant District Attorneys, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1972:

On October 23, 1968, the residences of Edith N. Caroll and Wilhelmina Madden in Delaware County were broken into and ransacked. In each instance various pieces of valuable jewelry were stolen. Subsequently, Frank J. Crutchley, Joseph E. Shaffer, Michael P. Dougherty and John A. Shaffer were arrested and charged with committing these burglaries. The four were later jointly indicted in bills charging burglary of the two residences, larceny and receiving stolen goods, conspiracy and possession of burglary tools.

On June 30, 1969, Crutchley, Dougherty and Joseph E. Shaffer were brought to trial on the indictments before a jury (John A. Shaffer was then unavailable) and during the trial, the court on its own motion, and over defendants' objection, declared a mistrial.[1]

---

[1] At the time, the introduction of evidence in chief had been completed by both sides. The Commonwealth was proceeding with rebuttal when the assistant district attorney inquired in a voice audible to the jury: "Is the man with the records here?" The court immediately aware of possible prejudice to all three defendants called a sidebar conference. The court then, because of the possible prejudice to the defendants and the possibility of post trial litigation if the defendants were dissatisfied with the jury's verdict, ordered the mistrial over the objection of all of the defendants and despite their request that the trial continue and be finalized by the jury then empanelled.

The following colloquy occurred in open court:

"*Mr. Marcone:* On behalf of the defendant Michael Dougherty, I oppose the mistrial. I feel that we would waive any prejudicial

The defendants brought to trial initially were re-tried on the same indictments on October 6th, and in

statement that you feel were placed before the jury. We were ready to proceed with trial and continue to the very end. And I discussed it with my client, and he feels the same as I do, sir.

"*The Court*: Mr. Marcone, I doubt that that was your original feeling in the matter.

"*Mr. Marcone*: That is correct, sir.

"*The Court*: You have a perfect right, of course, to change your mind. And even though you may have been desirous of a mistrial before I did declare it, you, of course, have the right to change your mind and say now that you did not want and you did advise me that you did not want a mistrial and prefer to go on. But let me say to you, that if I thought that the defendants were now and would be in the future completely satisfied with such a ruling, I think I might have accepted that and permitted the trial to continue. I have no doubt that your client has indicated to you, and I suppose that your recommendation or upon your advice that you do not seek a mistrial and agree to overlook or waive any rights that he may have to object to what has gone on in this trial, but I am looking ahead to the possibility that if your client were convicted, and this goes for the other defendants as well, if your client were convicted, after waiving what has gone on in this trial, that you might not, should he then be sentenced by me to a term of imprisonment, you might not at some later date, whether it be six months from now or six years from now, whatever the sentence might be, be representing him at the time. And under our problems in connection with the post conviction hearing act of which you and the other counsel are very well aware as I am now, that it is not unusual for defendants now, years after they have been incarcerated and committed to prison, to come in and say that I did this because my attorney in this case, Mr. Marcone, advised me to so do it. But I don't think it was right, and I didn't quite understand it, and my constitutional rights were violated and I demand a new trial.

And 99 times out of 100 that new trial is granted. And so I am refusing your motion. I am granting you an exception as I granted an exception to Mr. Auerbach for his client and Mr. Davis for his client. I think I did what I did for the protection of your clients. And I believe that the next time they are tried, it will be under much more, for want of a better word, antiseptic atmosphere than we have right now. So each of you have an exception to the order declaring a mistrial."

this trial John A. Shaffer was joined as a defendant. The defendants were convicted by the jury of all charges except that of possession of burglary tools, to which the court sustained demurrers at the close of the Commonwealth's evidence. Following the denial of post trial motions, prison sentences were imposed. Crutchley and John A. Shaffer filed appeals in the Superior Court and the judgments were affirmed without opinion. We granted allocatur.

## CRUTCHLEY APPEAL NO. 67

The only issue in connection with this appeal requiring discussion is whether or not Crutchley's rights under the Fifth Amendment Double Jeopardy Clause, as applied to the states by *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056 (1969), were violated when he was forced to trial for the second time for the same offense. The question evolves to this: Under what circumstances is retrial precluded when the initial trial is aborted prior to verdict without the defendant's consent and over his objection?

In answering this question, we look for guidance to the line of cases which has developed in the United States Supreme Court. The benchmark decision in this area is *United States v. Perez,* 22 U.S. (9 Wheat.) 579 (1824), wherein the following language was employed: "We think, that in all cases of this nature the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution,

under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of the discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." Id. at 580. Mr. Justice STORY for the majority therein developed the manifest necessity doctrine which in certain cases allows the trial judge to declare a mistrial without jeopardy attaching. Since 1824, the Supreme Court has consistently expanded on this theme. The classic example of properly declaring a mistrial without jeopardy attaching is where the jury is unable to agree. *United States v. Prez,* supra; *Keerl v. Montana,* 213 U.S. 135, 29 S. Ct. 469 (1909); *Dreyer v. Illinois,* 187 U.S. 71, 23 S. Ct. 28 (1902); *Logan v. United States,* 144 U.S. 263, 12 S. Ct. 617 (1892). The Court has also held that tactical problems of an army in the field justified the withdrawal of a court martial proceeding and the commencement of another. *Wade v. Hunter,* 336 U.S. 684, 69 S. Ct. 834 (1949). It also ruled that discovery by the judge during a trial that a member of the jury was biased pro or con was sufficient to warrant the jury's discharge. *Thompson v. United States,* 155 U.S. 271, 15 S. Ct. 73 (1894); *Simmons v. United States,* 142 U.S. 148, 12 S. Ct. 171 (1891). See also, *Commonwealth v. Ferguson,* 446 Pa. 24, 285 A. 2d 189 (1971); *Commonwealth v. Richbourg,* 442 Pa. 147, 275 A. 2d 345 (1971).

Although the Court has expanded on the manifest necessity concept, it has refused to develop any categories or hard and fast rules, rather the Court has consistently evaluated the problems on a case by case basis.

But, the Court has been very strict in its application of the principle as can be seen from the following language: "The discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances', to use the words of Mr. Justice STORY in United Staes v. Coolidge, 25 Fed. Cas. 622, 623. For the prohibition of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy'. United States v. Ball, 163 U.S. 622, 669, 16 S. Ct. 1192, 1194." *Downum v. United States*, 372 U.S. 734, 736, 83 S. Ct. 1033, 1034 (1963). Moreover, the Court went on to note: "We resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain and arbitrary judicial discretion'." Id. at 738, 83 S. Ct. at 1035-36. Thus, over the years the extent of the Court's guidance has to be found from general statements of policy.

In 1961, the Court seemingly broke with past precedent and in a five to four decision started to develop a new theory upon which to examine abuse of discretion. In *Gori v. United States*, 367 U.S. 364, 81 S. Ct. 1523 (1961), the Court, although speaking in terms of manifest necessity, bottomed its decision on whether the trial judge was acting "in the sole interest of the defendant."

In *Gori*, the defendant was brought to trial, and early in the proceedings, the trial judge on his own motion declared a mistrial because he felt that questions by the district attorney might convey to the jury knowledge of other crimes on the part of the defendant. Mr. Justice FRANKFURTER, apparently recognizing that this came close to an "abuse of discretion", chose to base his decision on the fact that the judge's sole interest was to protect the defendant, thus it was not double jeopardy.

The majority's decision that this was not double jeopardy immediately came under attack from four members of the Court in a dissent. The dissent noted that this was the first time that the Court had held that there was no double jeopardy when the defendant did not request the mistrial or consent to it and said that where it is the prosecutor's fault for the mistrial, double jeopardy attaches.[2]

The latest pronouncement of the Court on the subject is found in *United States v. Jorn*, 400 U.S. 470, 91 S. Ct. 547 (1971).

*Jorn* was a case wherein the United States Government charged the defendant with wilfully assisting in the preparation of fraudulent income tax returns. The jury was empanelled and the prosecutor called a taxpayer to the witness stand who the defendant had allegedly aided. The judge then warned the witness of his constitutional rights against self-incrimination and the witness expressed a willingness to testify; however, the judge refused to allow the witness to testify because he did not believe the witness was adequately warned of constitutional rights by the Internal Revenue Service before pretrial questioning, and on his own motion declared a mistrial. The United States Supreme Court ruled that retrial under these circumstances was constitutionally prohibited.

Mr. Justice HARLAN, speaking for the plurality of the Court recognized the following mandate as the guiding principle when considering the possibility of a mistrial: "The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings. A power in government

---

[2] While the situation in *Gori* is close to that presented in the instant case, it is distinguishable because in *Gori*, the defendant failed to object to the mistrial order.

to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial. And society's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws." Id. at 479, 91 S. Ct. at 554. The Court, after setting the stage for the opinion with the above quote, went on to discuss the doctrine of "manifest necessity" as developed in United States v. Perez, supra. The relevant portion of the Jorn opinion for our purposes came in Mr. Justice HARLAN's discussion of the balance between the "manifest necessity" standard and the defendant's right to finalize his case once the jury is empanelled. The Court stated:

"For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a sua sponte judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal'. See Wade v. Hunter, 336 U. S. at 689, 69 S. Ct. at 837.

"If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not at-

tributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceeding." (Emphasis added.) Id. at 484-85, 91 S. Ct. at 557.

It, therefore, seems clear to us that where a question of the propriety of a mistrial arises, particularly where as here the trial is almost completed, the defendant's desire to proceed and have the question of guilt or innocence finally resolved by the jury then impanelled must be respected, unless it is clearly manifest that by so doing the ends of public justice would be defeated. Since no such manifest necessity for a mistrial existed in the present situation, the trial judge abused his discretion in directing a mistrial and jeopardy attached. Hence, Crutchley's convictions at the second trial constitute double jeopardy and may *not* stand.

### JOHN A. SHAFFER APPEAL (No. 68)

John A. Shaffer was not a defendant in the first trial of this case; hence, the question of double jeopardy does not arise in this particular appeal. However, other assignments of error are asserted which require discussion.

The first claim of error is that certain evidence introduced against Shaffer (and his co-defendants) at trial was the product of an unlawful search and seizure; hence, its evidentiary use violated due process.[3] The pertinent facts of record are as follows:

---

[3] A pretrial motion to suppress this evidence was denied after hearing.

About 3 p.m., on October 24, 1968, John W. Katrenicz, a Pennsylvania State Police Officer, patroling the Baltimore Pike in a police vehicle was alerted to be on the watch for three or four white males traveling in a late model bronze colored automobile, resembling a Buick Riviera, bearing a license plate with "6M" as its first two digits.

Shortly thereafter, Officer Katrenicz observed a vehicle traveling west on the Pike somewhat like this description and a license plate with a "6M" as its first two digits, and he directed it to stop. At first it appeared as if the vehicle were occupied by the operator only, but after parking his police vehicle immediately behind the stopped vehicle and approaching it on foot, the officer saw that there were also three other passengers. The operator was later identified as John A. Shaffer, the appellant, and the passengers as Crutchley, Dougherty and Joseph E. Shaffer. The automobile was not owned by any of the occupants, and the record is unclear as to how it came into their possession.

At Officer Katrenicz's request, John A. Shaffer alighted from the automobile and stepped to the rear. When asked for his operator's license card, he presented one that had been issued to Dougherty. At this point, Officer Katrenicz walked to his police vehicle to radio for assistance. As he did so, he observed a "dark object" being thrown from a window of the Shaffer-operated vehicle.

Three other state police officers arrived within minutes. Officer Katernicz retrieved the "object" thrown from the vehicle and discovered it was a man's sock containing many pieces of jewelry, including various rings, a bracelet, a stickpin and a wrist watch. The stone was missing from the setting of one of the rings. Some of the rings had various initials inscribed in the bands. After the passengers alighted from the vehicle

at the officers' request, an unopened switchblade knife was seen protruding from behind the cushion of the back seat. A search of the automobile then ensued. Underneath the rear seat, the officers found a gold wedding band and a lady's ring with an orchid-colored stone. An unset stone, resembling a diamond, was found in the cushion of the front seat, and underneath the right front seat, the officers found a stocking containing a quantity of assorted jewelry. The gold wedding band and the ring with the orchid-colored stone found under the rear seat of the automobile and several other pieces of jewelry in the stocking found under the front seat were later identified as having been stolen during the Carroll burglary. Several other items of jewelry also found in the stocking were identified as having been stolen during the Madden burglary.

It is now fundamental that if the property involved is the fruit of an unlawful search, the evidentiary use thereof is constitutionally impermissible and violates due process of law. See *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961) ; *Commonwealth v. Pearson*, 427 Pa. 45, 233 A. 2d 552 (1967). Moreover, it is very clear that only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a warrantless search. See *Coolidge v. New Hampshire*, 400 U.S. 814, 91 S. Ct. 2022 (1971) ; *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975 (1970). The United States Supreme Court, as well as this Court, however, have long recognized a distinction between the warrantless search of an automobile and of a home or office. See *Preston v. United States*, 376 U.S. 364, 84 S. Ct. 881 (1964) ; *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280 (1925) ; *Commonwealth v. Smith*, 443 Pa. 151, 277 A. 2d 807 (1971). Since an automobile is movable, and once the initial stop is made the occupants will be alerted, if warrantless

searches of motor vehicle were not allowed under certain limited circumstances, the contents of the car might never be seen again. Thus, under certain circumstances, an immediate search of an automobile is constitutionally permissible.

To ascertain if the circumstances of the instant case fit within constitutional limitations, we turn to our recent pronouncement in *Commonwealth v. Lewis*, 442 Pa. 98, 275 A. 2d 51 (1971), wherein we set forth the following guidelines: "As we recently stated in Commonwealth v. Dussell, 439 Pa. 392, 266 A. 2d 659 (1970), the stopping of an automobile or the arrest of the driver of a motor vehicle for an ordinary traffic offense does not without more, permit a warrantless search of the vehicle. *To justify such a search even though a movable vehicle is involved, an officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants.* See Commonwealth v. Dussell, supra, and authorities cited therein." Id. at 101, 275 A. 2d at 52. [Emphasis added.] See also, *Chambers v. Maroney,* supra, at 47-48, 90 S. Ct. at 1979. Applying the facts in the instant case to the above stated rule, we are not persuaded the search here challenged was unreasonable or that the fruits thereof were constitutionally proscribed as evidence at trial.

The attempt to discard valuable. jewelry, in itself, was sufficient to warrant the officers in the belief it had been stolen and that other evidence of the crime or crimes might be found in the automobile. Additionally, the presence of the knife gave the officers probable

cause to search for other weapons accessible to the occupants of the vehicle.

It is next claimed the trial evidence was insufficient as a matter of law to establish that the appellant, Shaffer, was ever in possession of the stolen jewelry. In this connection, it is asserted that he was not the owner of the automobile he was operating and there was no direct evidence to show he was aware of the presence of the jewelry in the vehicle.

It is true for the purposes of this case, it was incumbent upon the Commonwealth to prove that Shaffer was either in actual possession of the jewelry, or that he exercised a conscious dominion or control over it. Cf. *Commonwealth v. Davis*, 444 Pa. 11, 280 A. 2d 119 (1971). In our view, the evidence was adequate to at least warrant the conclusion that Shaffer exercised a conscious dominion or control over the jewelry.

The totality of the circumstances justify a finding that all of the occupants of the vehicle were acting in concert and the act of throwing the jewelry from the vehicle was certainly exercising a conscious dominion and control over the jewelry, in an obvious attempt to conceal the jewelry from the officers.

The final complaint is the trial judge erred in charging the jury it could infer from Shaffer's possession of the recently stolen jewelry that he was one of the thieves. The main difficulty with this position is that appellant confuses an inference with a rebuttable presumption. A rebuttable presumption is a means by which a rule of substantive law is invoked to force the trier of fact to reach a given conclusion, once the facts constituting its hypothesis are established, absent contrary evidence. See 9 Wigmore, Evidence, §2491 (3rd ed. 1940). An inference is no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evi-

dence and the experiential accuracy of the inference warrant so doing. A rebuttable presumption forces the defendant to come forth or suffer inevitable defeat on the issue in controversy. An inference, on the other hand, does not put the defendant in such a position. It does not shift the burden of going forward with the evidence, for the trier of fact can reject the inference in whole or in part. Moreover, an inference does not shift the burden of persuasion or relieve the Commonwealth of the burden of proving every essential element of the alleged offense beyond a reasonable doubt. See 9 Wigmore, supra, at §2513.

Reading the charge in its entirety, it is clear that the trial judge never informed the jury that Shaffer's possession of the jewelry gave rise to a legal presumption of guilt, or shifted the burden of proof, or required Shaffer to satisfactorily explain the possession in order to escape a finding of guilt. The jury was merely told that from Shaffer's possession of the jewelry it *could infer* he was one of those responsible for the theft. Further, the jury was clearly instructed that the burden was on the Commonwealth throughout the trial to establish beyond a reasonable doubt every element of the crime charged.

The courts have long recognized that certain evidentiary inferences meet due process standards. The United States Supreme Court, while speaking on the issue of evidentiary inferences, stated the following in *Rugendorf v. United States,* 376 U.S. 528, 84 S. Ct. 825 (1964): "As early as 1896 this Court dealt with such situations. In Wilson v. United States, 162 U.S. 613, 16 S. Ct. 895, 40 L. Ed. 1090, Chief Justice FULLER held for a unanimous Court that '[p]ossession of the fruits of crime, recently after its commission justifies the inference that the possession is guilty possession, and though only *prima facie* evidence of guilt, may be of controlling weight, unless explained by the circum-

stances or accounted for in some way consistent with innocence.' 162 U.S. at 619, 16 S. Ct. at 898, 40 L. Ed. 1090." Id. at 536-37, 84 S. Ct. at 830.[4]

In the instant case, we are dealing only with an inference, which is permitted because factual prerequisites competently established that the possessor of the recently stolen property could be the thief. The inference in the instant case merely accords the evidence its natural probative force, the inference of guilt is simply a result that the triers of fact are *permitted* to reach based on the evidence. We stress that the triers of fact are permitted to reach the inference, but they may also reject it, the result is within the jury's discretion, and they are in no way compelled to reach any conclusion.[5] In the instant case, the trial judge properly stressed the fact that the possession must be recent, he pointed out that appellant did not have the burden of explaining possession, he more than adequately charged the jury on the presumption of innocence, he informed the jury that the Commonwealth had the burden of proving every element of the crime, beyond a reasonable doubt, he informed the jury of the significance of Shaffer's defense and stated that the jury could not draw anything from the fact that certain defendants did not testify in their own behalf, and lastly he stated the jury *could* infer guilt from the possession, thereby making it clear that it was within their discretion.

*Commonwealth v. Owens*, 441 Pa. 318, 271 A. 2d 230 (1970),[6] does not compel a reversal of Shaffer's convic-

---

[4] See also, *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 206 A. 2d 43 (1965).

[5] The inference cannot be regarded as a comment on the accused's failure to testify. See *United States v. Williams*, 405 F. 2d 14 (4th Cir. 1968) ; *State v. Rhymes*, 107 Ariz. 12, 480 P. 2d 662 (1971) ; *Peoples v. Hayes* (Ill. App.), 272 N.E. 2d 423 (1971).

[6] *Owens* relied on two United States Supreme Court decisions, *Leary v. United States*, 395 U.S. 6, 89 S. Ct. 1532 (1969), and

108

tion. First, *Owens* dealt with the validity of a presumption of knowledge, which as we have before pointed out is substantially different from the issue herein, namely, the validity of an inference. Secondly, *Owens* is factually inapposite for herein unlike in *Owens* it can be said with substantial assurance that the inference permitted to be drawn by the jury from Shaffer's possession of the jewelry "is more-likely-than-not to flow from the proven facts on which it is made to depend". See *United States v. Wolford,* 444 F. 2d 876 (D.C. Cir. 1971); *United States v. Coggins,* 433 F. 2d 1357 (D.C. Cir. 1970); *United States v. Johnson,* 433 F. 2d 1160 (D.C. Cir. 1970); *Pendergrast v. United States,* 416 F. 2d 776 (D.C. Cir. 1969), cert. denied, 395 U.S. 926, 89 S. Ct. 1782 (1969); *State v. Rhymes,* 107 Ariz. 12, 480 P. 2d 662 (1971).

---

*Turner v. United States,* 396 U.S. 398, 90 S. Ct. 642 (1970). These two cases are the latest pronouncements by that Court in a line of cases which have evaluated the constitutionality of criminal statutory presumptions. In at least two of the decisions which fall in this line, the rule of *Wilson v. United States,* supra, was recognized as valid. In *United States v. Gainey,* 380 U.S. 63, 70, 85 S. Ct. 754, 759 (1965), it was stated: "The jury was thus specifically told that the statutory inference was not conclusive. 'Presence' was one circumstance to be considered among many. Even if it found that the defendant had been present at the still, and that his presence remained unexplained, the jury could nonetheless acquit him if it found that the Government had not proved his guilt beyond a reasonable doubt. Holland v. United States, supra. *In the absence of the statute, such an instruction to the jury would surely have been permissible.* Cf. Wilson v. United States, supra." [Emphasis ours.] Also in *Tot v. United States,* 319 U.S. 463, 467, 63 S. Ct. 1241, 1244 (1943), the Court said: "The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference. In many circumstances courts hold that proof of the first fact furnishes a basis for inference of the existence of the second." [Footnote citing *Wilson.*] Thus, it is clear that the underlying validity of *Wilson* has not been eroded by the ruling in *Owens,* and the cases therein relied on.

Accepting that an evidentiary inference must also meet the constitutional standard of "more-likely-than-not", the extent of the effect which *Owens* has on the instant case is to merely set out the appropriate test to determine if the inference under consideration is constitutionally valid. If the inference the jury is allowed to draw from the facts proven by the Commonwealth, is arbitrary, because of a lack of connection between the two, due process is fatally lacking.

In our view, the inference under consideration, when competently invoked as it is in the instant case, clearly meets the "more-likely-than-not" test. In reaching this conclusion, we look to the following criteria to determine if the inference is valid: the lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it may be assimilated into trade channels. In the instant case, Shaffer was found in possession of the jewelry less than twenty-four hours after the two burglaries, he had in his possession a large quantity of jewelry (approximately twenty-five pieces), and it was clearly marked with the names and initials of other individuals. This quantity of jewelry, with this type of markings is not sold on street corners, or left lying around in automobiles. Moreover, when Shaffer was confronted by the police he gave a false name, and one of his co-felons attempted to hide the jewelry from the investigating officers by throwing it out of the window of the vehicle in a sock.[7]

We hold, therefore, with respect to the inference under consideration, that the connection between the proof of the unexplained possession of the recently stolen property and the permissible inference as to who

---

[7] An attempt to dispose of the property can also be considered when analyzing if the inference is valid. Cf. *United States v. Williams*, 405 F. 2d 14 (4th Cir. 1968).

stole the property meets the constitutional mandate when the inference is properly invoked, as in this case, and the proof of the required facts supplies the necessary nexus which due process demands.

The order of the Superior Court in Appeal No. 68 is affirmed.

The order of the Superior Court in Appeal No. 67 is reversed.

Former Mr. Chief Justice BELL and former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am in agreement with the Court's resolution of defendant Crutchley's appeal and join in the first part of the majority's opinion. As to appellant John A. Shaffer's appeal, however, I am unable to accept the majority's pronounced departure from our recent decisional law in *Commonwealth v. Davis*, 444 Pa. 11, 280 A. 2d 119 (1971); *Commonwealth v. Russell*, 444 Pa. 4, 279 A. 2d 185 (1971); *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A. 2d 476 (1971); *Commonwealth v. Whitner*, 444 Pa. 556, 281 A. 2d 870 (1971); and *Commonwealth v. Townsend*, 428 Pa. 281, 237 A. 2d 192 (1968). I therefore dissent.

The pivotal facts upon which appellant Shaffer's appeal turn relate back to the circumstances of his arrest. The police, concededly acting upon probable cause, stopped a car driven, but not owned, by Shaffer and occupied by four individuals. During a constitutionally permissible search incident to a lawful arrest, the police discovered several items of recently stolen jewelry that eventually formed the basis for Shaffer's conviction for receiving stolen goods, burglary, and larceny. The jewelry was found in several locations—

some of it was concealed in a sock that was thrown out of the car window *after* appellant Shaffer left the car and approached the police car; the rest of the jewelry was found under the front seat and under the rear seat.

The jewelry in question had been stolen from two residences the day before the above arrest and search was made. On the sole basis of Shaffer's mere presence in the automobile the majority sustains a finding that defendant had possession of the goods and thus could be convicted of both receiving stolen goods and the actual theft of the jewelry. That holding is totally at odds with our recent decisions in *Commonwealth v. Davis,* supra; *Commonwealth v. Russell,* supra; *Commonwealth v. Tirpak,* supra; *Commonwealth v. Whitner,* supra, and *Commonwealth v. Townsend.*

After concluding that a jury would be warranted in finding that defendant had possession of the stolen goods, the majority goes on to uphold the trial court's charge to the jury that from defendant's possession of the goods, they could infer that the defendant was the actual thief. I believe that this is an impermissible inference, see *Commonwealth v. Owens,* 441 Pa. 318, 271 A. 2d 230 (1971). Assuming, arguendo, that defendant had possession of the stolen jewelry, I would reverse appellant Shaffer's convictions for larceny and burglary.

In *Commonwealth v. Townsend,* 428 Pa. 281, 237 A. 2d 192 (1968), this Court reversed a conviction for "possession of a firearm without a license" where the defendant was one of three men in a car in which three unlicensed guns were found—one in the back seat and one protruding from under the front seat, as well as one concealed under the hood. We there first noted that: "[t]wo elements are essential to a finding of joint possession: the power of control over the weapon and the intention to exercise this control." Id. at 284, 237

A. 2d at 194. We then went on to reject the Commonwealth's contention that "mere presence in a vehicle containing two weapons is sufficient to sustain a finding of guilt." Id. at 285, 237 A. 2d at 194.

Similarly in *Commonwealth v. Davis,* 444 Pa. 11, 280 A. 2d 119 (1971), this Court held that "a defendant can be said to be in possession of stolen goods only when it is proved that he exercised conscious control or dominion over those goods." Id. at 15, 280 A. 2d at 121. In *Davis* the defendant was charged with receiving stolen goods that were discovered by the police in the basement of the defendant's former wife. Despite the fact that defendant spent much time in the apartment, and despite the fact that defendant's present mistress had a key to a basement cupboard that contained several dress price tags, this Court held that the evidence was insufficient to support a conviction for receiving stolen goods. The same analysis was applied in *Commonwealth v. Russell,* 444 Pa. 4, 279 A. 2d 185 (1971), where we held that a defendant could not be held to have "control or dominion" of stolen goods where the goods were located in his sister-in-law's house. Again in *Commonwealth v. Whitner,* 444 Pa. 556, 281 A. 2d 870 (1971), we held that a defendant could not be said to have "possession" of stolen goods on the sole evidence that he was found in a friend's apartment that contained, in plain view, recently stolen articles.

Finally, our recent decision in *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971), compels a different result than that reached by the majority. In *Tirpak* the police entered a room that contained seven individuals and a quantity of narcotics sitting in the middle of the floor. This Court held that the defendant's presence in the room, even though the narcotics were not concealed but in plain view of all present, was not "sufficient to prove beyond a reasonable doubt that

these four defendants were guilty of . . . *Possession or control* of drugs". Id. at 537, 272 A. 2d at 478 (emphasis added).

Virtually ignoring these well reasoned opinions the majority offers the following as its sole justification for concluding that a jury would be "warranted" in finding that appellant Shaffer had "dominion or control" over the jewelry: "The totality of the circumstances justify a finding that all of the occupants of the vehicle were acting in concert and the act of throwing the jewelry from the vehicle was certainly exercising a conscious dominion and control over the jewelry, in an obvious attempt to conceal the jewelry from the officers."

With all due deference to the majority, I fail to see what distinguishes the "totality of the circumstances" in this case, where defendant is merely one of four people in a car that had stolen jewelry carefully concealed, from the "totality of the circumstances" in *Townsend*, where defendant was one of three individuals in a car which contained unlicensed firearms, or in *Tirpak*, where appellants were four of seven individuals found in a room with narcotics prominently displayed in its center.

Nor can I agree with the majority's statement that the occupants in the car were "acting in concert". Nothing in the record supports such a finding, and I see nothing which distinguishes this case from *Townsend*, where defendant was one of three people in a car, or *Tirpak*, where appellants were four of seven people in a room.

Finally, I fail to see why the majority attaches significance to the fact that, *while appellant Shaffer was out of the car and talking to a police officer,* another individual threw a sock containing jewelry out of the window. Certainly that act says something about the

"dominion or control" of the thrower, but nothing whatsoever as to an individual who was no longer in the car.

Because I find, following the principles established in our recently decided law, supra, that defendant had no possession, control or dominion over the goods in question, I would reverse the judgment of sentence.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE POMEROY:

I join in the opinion of the Court with respect to the appeal at No. 67 and agree with much that is said with respect to the appeal at No. 68. I disagree, however, with the last portion of the opinion concerning that appeal for much the same reasons which compelled my separate concurrence in *Commonwealth v. Whitner*, 444 Pa. 556, 562 (1971). As set out more fully in that opinion, the majority's concern with the issue of possession in a prosecution for larceny and burglary was in my view academic, for none of the elements of either crime had been made out. In this case, while I would again agree that appellant has been shown to be in literal or constructive possession of the stolen goods, this fact alone does not warrant his conviction for burglary. I am therefore obliged to dissent.

The crime of receiving stolen goods (Act of June 24, 1939, P. L. 872, §817, as amended, 18 P.S. 4817), requires possession of goods knowing them to have been stolen. Before our decision in *Commonwealth v. Owens*, 441 Pa. 318, 271 A. 2d 230 (1970), the rule in Pennsylvania was that the fact that a person was in possession of stolen property was sufficient to support a presumption, which was rebuttable, that the person knew that the goods were stolen. In *Owens* the Court held that such a presumption did not meet the "more likely than not" test mandated by the United States Supreme Court in *Leary v. U. S.*, 395 U.S. 6, 23 L. Ed.

2d 57 (1970). My dissent from the *Owens* holding was based on the following: In *Leary*, the Supreme Court reexamined the standards by which to measure criminal statutory[1] presumptions in light of due process requirements. The upshot of its analysis of its prior case law on the subject was thus stated: ". . . a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary', and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. And in the judicial assessment the congressional determination favoring the particular presumption must, of course, weigh heavily."

In the normal receiving stolen goods situation, the proved facts are (1) that goods were stolen; (2) that the theft had occurred but recently; (3) that the stolen goods were found in the possession of the defendant; and (4) that no explanation as to the possession has been made. To use the *Leary* formulation, I believe that practical human experience allows it to be said with substantial assurance that the presumed fact (that of *knowledge* of the stolen character of the goods) "is more likely than not" to flow from the proved facts, above stated, on which the assumed fact is made to depend.[2] Moreover, when we considered *Owens*, it

---

[1] As the *Owens* opinion notes, the presumption of guilty knowledge there involved (and likewise involved in the case at bar) is not statutorily prescribed, but was judicially created in determining the quantum of proof required to make out the crime of receiving stolen goods. For purposes of the *Owens* case and the instant case, I do not consider this distinction from the basis of the presumption in *Leary* to be of importance.

[2] Although held to violate due process precepts in *Commonwealth v. Owens, supra*, such a presumption has been held to not be violative to a defendant's privilege against self-incrimination. See, e.g., *Turner v. United States*, 396 U.S. 398, 417, 24 L. Ed. 2d 610 (1970).

was my belief, still held, that the particular presumptions treated in *Owens* and *Leary*, respectively, were quite distinguishable, notwithstanding that each was bottomed on possession of goods. I therefore disagreed that the decision in *Leary* was controlling on us in *Owens*. Cf. *Turner v. U. S.*, 396 U.S. 398, 24 L. Ed. 2d 610 (1970) (holding valid, as tested by the *Leary* rule, the provisions of §2 of the Act of February 9, 1909, 35 Stat. 614, as amended, 21 USC 174, "insofar as it permits a jury to infer that heroin possessed in this country is a smuggled drug". 396 U.S. at 416, 24 L. Ed. 2d 623).

Following from my continued belief that the Pennsylvania presumption was reasonable in the light of experience and not constitutionally prohibited, I cannot quarrel with the Court's present approval of a permissible inference in place of the forbidden presumption with respect to knowledge of the stolen character of the possessed articles. Thus I agree that the conviction of Shaffer of the crime of receiving stolen goods was supported by sufficient evidence and that the charge of the court was not in error in allowing the inference of knowledge.

Shaffer, however, was convicted not only of receiving stolen goods, but also of burglary of two residences and of larceny. As I indicated in *Commonwealth v. Whitner, supra* (concurring opinion), neither of these crimes includes any element of continuing possession of stolen property. To sustain a conviction of burglary there must be proof beyond a reasonable doubt that the accused entered a building with the intent of committing a felony. To sustain a conviction of larceny, there must be proof beyond a reasonable doubt that the accused took and carried away the personal property of another with the specific intent of depriving the owner permanently of the property. Unquestion-

ably, these elements of the two crimes under consideration, like other crimes, can be proved by circumstantial evidence. Possession may be an important link in a chain of circumstantial evidence, and it concededly supports an inference, if not a presumption, that *someone* stole the goods. I find it difficult to believe, however, that it is more likely than not that the possessor was himself the burglar and the thief, or that, even if such an inference is permissible, it is the equivalent of proof beyond a reasonable doubt of the elements of the two crimes in issue.

The cases cited by the majority do not indicate a different conclusion. *Wilson v. U. S.,* 162 U.S. 613, 40 L. Ed. 1090 (1896), quoted with approval in *Rugendorf v. U. S.,* 376 U.S. 528, 536-7, 11 L. Ed. 2d 887, 894 (1964), established that "[p]ossession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession". I agree that appellant Shaffer's possession was guilty, but only so far as it provided the basis to show knowledge to convict him as a receiver. In accord with this view is *Commonwealth ex rel. Chatary v. Nailon,* 416 Pa. 280, 206 A. 2d 43 (1965), where the defendant in possession was found guilty of receiving stolen goods, but acquitted of the charges of burglary and larceny. While there admittedly is some Pennsylvania law to support the majority position, see *Commonwealth v. Newman,* 276 Pa. 534, 120 Atl. 474 (1923) and cases cited therein, it preceded *Owens, Leary* and *Turner,* and cannot be considered controlling now.