McCALEB, Chief Justice.
 

 The defendant, Charles Lee Jackson, was charged, tried, and convicted of possession of heroin, in violation of R.S. 40:971. Following imposition of sentence, he prosecuted this appeal, relying on two bills of exceptions for a reversal of his conviction.
 

 The first bill was reserved when the trial judge overruled defense motion to suppress evidence obtained from defendant’s person, and the second when the judge admitted the evidence during the trial. A proper consideration of these bills requires a detailed statement of the facts.
 

 According to the record two police officers, patrolling in the vicinity of the St. Bernard Hortsing Project in the lower section of New Orleans around 8:50 p. m., saw a 1963 maroon Buick Riviera, with tail and parking lights on, standing near a corner on a side of the street where no parking was allowed, the car being the only one parked on that side. The officers decided to check the license number of the car, as they had recovered several stolen Buicks in that vicinity in the previous two weeks. Finding- that they were unable to see the number from the side while passing in the patrol car, the officers made a “U” turn at the corner; but, after they had done so a,nd were approaching the car, they noticed a man leave a nearby house, get in the car, and drive toward them. Seeking to check the license and also issue a traffic citation for a standing violation, the officers made another “U” turn and pursued, but were unable to locate the car after it turned into a cross street.
 

 About an hour later, they saw the same car again illegally parked in the same spot, although headed in the opposite direction. They sought again to maneuver to a place that would permit a check of the license but, as they approached, they saw the defendant leave the front porch of a house at that corner, get into the vehicle, and drive away. This time the officers were directly behind and turned on their blue lights as they pursued the car. The defendant stopped.
 

 The officers approached the car and asked the defendant to get out and give them his driver’s license and registration
 
 *854
 
 paper, the latter disclosing the car was registered to a female.
 
 [1]
 
 One officer was checking these while the other, standing directly in front of the defendant, who was fully illuminated by the spot light on the police car, began to question him about ownership of the car. As thus positioned, the officer almost immediately saw a cellophane wrapper, with what resembled glassine envelopes inside, partially protruding from the front of defendant’s shirt, at the bottom of the zipper opening, the whole being bound around tightly with a rubber band. The flat rectangular object (approximately two and a half inches long and half an inch wide) was snagged on a chain around defendant’s neck, from which hung a small heart-shaped medallion.
 

 The officer asked the defendant what was in the package, and simultaneously recognizing' — from experience in narcotic work and arrests made in the vicinity in connection therewith — that the bundle was the same length and width as the envelopes in which heroin is usually packed, reached for it. He was successful in removing the package from the shirt front despite defendant’s effort to grab it first. Opening the package he found it contained three glassine envelopes, each containing a white powdered substance that he believed to be heroin. He immediately placed the defendant under arrest.
 
 [2]
 
 As they were walking to the police car, the defendant endeavored to wrest the package from the officer’s hand, and a struggle ensued, but the defendant was unsuccessful in the attempt.
 

 Describing the manner in which he noted the package, the officer said at the trial on the motion to suppress: “ * * * he had a shirt on exactly like the one he has on now, except that it was red; the zipper and the brass ring on it. The zipper was pulled down all the way to the bottom of the zipper, which would be about the second button on a shirt. The packet was half in and half out of the shirt, as if hastily stuck in. And it was snagged on a gold chain that was around his neck with a heart.”
 

 As to the manner in which he obtained the package, the officer testified: While the defendant was being questioned about his possession of ’a car registered to someone else, “ * * * I was looking at the subject, I noticed a cellophane package sticking out of his shirt. ■■ And I reached for the package, and as I did, he did, and my hand got there before his did.” When testifying during the trial he put it this way: “It was a suspicious package and I
 
 *856
 
 asked the defendant what it was. I asked: What is this? And I was reaching for it; he was reaching for it; and I grabbed it "before he did.”
 

 i. -The first bill of exceptions is predicated on the. contention that the search and seizure of the cellophane wrapper was illegal because it was not incidental to a lawful arrest, and argument in this Court is of the same tenor. As stated in the bill, at the time the officer “ * * * grabbed for the cellophane-wrapped packet he noticed in defendant’s shirt,
 
 he had no probable cause to arrest;
 
 that the search was not therefore incidental to a lawful arrest; and that an illegal
 
 search
 
 which discloses probable cause cannot justify an antecedent arrest.” (The emphasis is supplied.)
 

 There is no merit in this bill, or in the second one, which is based on the same contention. It is evident under the facts that no search was made for the evidence. There was only a seizure, for that which is in plain view is not the subject of a search. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; State v. Alexander, Or., 495 P.2d 51; Alcorn v. State, Ind., 265 N.E.2d 413; and McCormick on Evidence, 2nd Edition, at page 389. Consequently, the law with respect to probable cause to arrest in connection with alleged illegal searches and seizures has no application here.
 
 [3]
 
 As stated in McCormick on Evidence: “Under current interpretation the applicability of the warrant requirement to seizures differs significantly from its application to searches.” , -
 

 The evidence was clearly admissible under the “plain view” doctrine, which is an exception to the warrant rule governing searches and seizures. As stated in the annotation at 29 L.Ed.2d 1067, where the cases in the United States Supreme Court on this point are collected and analyzed, under the “plain view” doctrine “ * * * the observation of objects in ‘plain view’ has been regarded as distinct from ‘search’ for purposes of the Fourth Amendment’s prohibition against ‘unreasonable searches and seizures,’ and it has been held that at least under certain circumstances, objects falling in the ‘plain view’ of a law enforcement officer who has the right to be in the position to have that view are subject to seizure and may be introduced in evidence.”
 

 In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court discussed extensively the “plain view” doctrine, although the case involved both a search and
 
 *858
 
 a seizure. With respect to evidence admissible under this doctrine the court said:
 

 “It is well established that under certain circumstances the police may seize evidence in plain view without a warrant.
 

 * * * * * *
 

 “What the ‘plain view’ cases have in common is that the police officer in each of them
 
 had a prior justification for an intrusion
 
 in the course of which he came
 
 inadvertently
 
 across
 
 a piece of evidence in criminating the accused.
 
 The doctrine serves to supplement the prior justification —whether it be a warrant for another object, hot pursuit, search incident to lawful arrest,
 
 or some other legitimate reason for being present
 
 unconnected with a search directed against the accused — and permits the warrantless seizure.” The court emphasized that even where there is no probable cause to justify a warrantless search and seizure, the evidence will, nevertheless, be admitted if the search and seizure was made under “exigent circumstances.” (Italics have been supplied.)
 

 The court further pointed out that where the initial intrusion is bottomed on one of the exceptions to the warrantless search and seizure (such as “ ‘hot pursuit’ or search incident to a lawful arrest,
 
 or by an extraneotis valid reason for the officer's presence”),
 
 for the evidence seized to be admissible, its discovery “in plain view must be inadvertent,” and it must be “contraband, stolen, or dangerous in itself.” I-n such a case, the court said: “As against the minor peril to the Fourth Amendment protections, there is a major gain in effective law enforcement.” (The emphasis has been supplied.)
 

 In the light of this law, it is evident that the packet seized from the defendant was admissible in evidence under the “plain view” doctrine.
 
 [4]
 
 If not, indeed, in “hot pursuit,” the officers had a valid reason for the initial intrusion into defendant’s privacy. He was stopped on suspi
 
 *860
 
 cion the car he was driving had been stolen, and also in order to issue two traffic citations. The officer “came inadvertently across” the package. In the light of his experience,
 
 [5]
 
 he had reasonable and probable cause to believe the packet, in its particular shape and size, and in plain view, was contraband. Defendant’s effort to grab the package was a factor confirming the officer’s belief that it was contraband and, as such, “evidence incriminating the accused.”
 
 [6]
 
 It was contraband. Further, there were “exigent circumstances,” since it was very likely that if the defendant could have secured possession of the package, he would have sought to destroy it or flee the scene with it.
 
 [7]
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 BARHAM, J., dissents.
 

 [1]
 

 . The officers had already determined from a check with the dispatcher that the vehicle was registered to a female, and it was later ascertained the defendant was given permission by the owner to use the car.
 

 [2]
 

 . Because of liis arrest on the narcotic charge, the defendant was not issued the two citations for illegal parking.
 

 [3]
 

 . In certain circumstances evidence lias been held admissible even though the arrest was subsequent to the seizure, as, for example, where they are integral parts of a single incident. See, State v. Cobuzzi, 161 Conn. 371, 288 A.2d 439; State v. Alexander, Or.App., 495 P.2d 51, and the authorities therein cited.
 

 [4]
 

 . Commonwealth v. Shaffer, 447 Pa. 91, 288 A.2d 727 (a man’s sock found to contain jewelry seen only as a “dark object” thrown from a car window) ; United States v. Broomfield, D.C., 336 F.Supp. 179 (shoe box in which marijuana was found and a bottle in which heroin was found); People v. Joyner, 50 Ill.2d 302, 278 N.E.2d 756 (purse in hands of passenger found to contain revolver although the officer saw only a “shining object” in purse); State v. Alexander, Or.App., 495 P.2d 51 (substance in sandwich tag found to be marijuana); People v. Caruso, 2 Ill.App.3d 80, 276 N.E.2d 112 (slips of paper in. blender in kitchen as evidence of gambling); People v. Bombacino, 51 Ill.2d 17, 280 N.E.2d 697 (baseball bat seen in ear when light flashed through window); State v. Edwards, 257 La. 707, 243 So.2d 806 (stolen property in suit-eases); Mears v. State, 52 Wis.2d 435, 190 N.W.2d 184 (brown leather case on car seat); and United States v. Hill, D.C., 340 F.Supp. 344 (counterfeit money in bags).
 

 [5]
 

 . See, State v. Alexander, Or.App., 495 P.2d 51; State v. Oltjenbruns, 187 Neb. 694, 193 N.W.2d 744.
 

 [6]
 

 . See, Commonwealth v. Shaffer, 447 Pa. 91, 288 A.2d 727; People v. Joyner, 50 Ill.2d 302, 278 N.E.2d 756.
 

 [7]
 

 .See, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.