BOYER, Judge.
This is an interlocutory appeal by the State of Florida from an order of the trial court suppressing evidence in a criminal proceeding against the appellee charged by information with possession of marijuana and paraphernalia to be used incident to the use of narcotics.
*5 The defendant (appellee here) filed a motion “to suppress any confession or admissions illegally obtained.” Attached to the motion, and in support thereof, were the depositions of one Arnold, a civilian investigator employed by the United States Navy, having arrest powers and one Kovalycsik, a chief petty officer. There was no other evidence nor testimony adduced before the trial judge in support of or in opposition to the motion to suppress. The motion recited that the two depositions above mentioned conclusively demonstrated “that the search initially was illegal and thgt any evidence thereafter obtained is inadmissible against defendant as ‘the fruit of a poisonous tree.’ ” The trial court entered an order reciting consideration of the motion and the depositions above mentioned, ordering “that the motion of the defendant to suppress anything and everything obtained by the searches above described be and the same is hereby granted and defendant’s motion to suppress any confession or admissions illegally obtained be and the same is hereby granted.”
The depositions considered by the trial court, and forming the basis of his order, reveal that the defendant enjoyed such a position with the United States Navy as to require a special intelligence security clearance and that the naval command had received information that the defendant was involved in the use of marijuana resulting in the captain of the command directing Arnold and the chief to investigate. The two investigators went to the trailer occupied by the defendant and knocked upon the door, whereupon the defendant responded giving the appearance as having just gotten out of bed. The investigators informed the defendant of their identities and mission and., asked him to get dressed and accompany them back to Corry Field for questioning.
The depositions of the two investigators had been taken by the defendant’s attorney, being the same attorney who is representing the defendant on this appeal. Regarding the initial entrance into the trailer the deposition of Arnold, then being questioned by the attorney for the defendant, reveals the following:
“Q. Were you able to look inside and see him while he was dressing, or was he in another part of the trailer ?
“A. When he — when he went to get dressed, the door was partially open and myself and the Chief stepped inside of the living room to wait on him.
“Q. And did he go - back in another room?
“A. Yes, he went back into one of the bedrooms to get dressed.
“Q. And, when he got dressed, and came out, what happened ?
“A. During the time he was back there getting dressed, I noticed a brown paper bag near the center of the living room floor that had. two plastic bags in it that is commonly used to transport or to carry marijuana.' I reached over and picked up these two bags and noticed that they did have what appeared to be marijuana in the bags and I carried them with me.
“Q. You took those bags out of the trailer with you ?
“A. Yes, sir.
“Q. And, Mr. Kauflin then came and accompanied you back to Corry Field?
“A. Yes, sir.”
Arnold was not asked whether the defendant invited the investigators to wait in the living room while he got dressed and there is nothing in his deposition either affirming or negating such an invitation. However the deposition of the chief petty officer, also conducted by the defendant’s attorney, revealed the following:
“Q. Now, you were accompanied by Mr. Lance Arnold ?
“A. Yes, sir, I was in accompany with Mr. Arnold. We knocked on the door and we told him we would like to talk *6 with him on base at Corry Field. He says, come on in while I get dressed and we’ll go down. We went on in, and Mr. Kauflin went towards the bedroom of the trailer — towards the back of the trailer. While he was gone, Mr. Arnold noticed a paper bag on the floor, and noticed the container of that which is used —the type that contains marijuana, the plastic bag, little baggies. We then left the trailer.
“Q. Did Mr. Arnold pick the bag up?
“A. Yes, sir, Mr. Arnold picked the bag up.”
The depositions further reveal that the defendant thereupon accompanied the investigators to the chief’s office in Corry Field where he was “given his rights” and upon indicating that he understood his rights and did not wish a lawyer the defendant was questioned regarding his use of marijuana which he initially denied but finally admitted. The defendant thereupon signed an authorization for permission to have his trailer searched, and he then returned with the investigators where he produced a small suitcase containing five plastic bags of marijuana and other paraphernalia incident to its use.
Arnold’s deposition also reveals extensive experience as an investigator and that he had been informed by at least two informants that the defendant was a user of marijuana. In response to further questions by the defendant’s attorney regarding the plastic bags initially found in the trailer the deposition reveals the following:
“Q. Was there anything visible in the bag, just by casually looking in the bag, you could tell what was in it ?
“A. By casually looking down in the bag, I saw the plastic bag, and from my experience, I recognized what it was.
There was other trash in the bag, also. * * *»
The appellant urges that this case is controlled by “the plan view doctrine”, citing State v. Parnell, Fla.1969, 221 So.2d 129; State v. Perez, Fla.1973, 277 So.2d 778; State v. Clarke, 4 Fla.App., 1970, 242 So.2d 791; State v. Bryant, 2 Fla.App., 1971, 250 So.2d 344 and Powers v. State, 1 Fla.App., 1973, 271 So.2d 462.
The appellee urges that the plain view doctrine is totally inapplicable and that the case is governed by the “fruit of the poisonous tree doctrine”, citing Silverthorne Lumber Company v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426, Nardone v. United States (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, and French v. State of Florida, 3 Fla.App., 1967, 198 So.2d 668.
We are of the view that the plain view doctrine is applicable, that neither the physical evidence nor the admissions of the defendant were tainted and that the order of the trial court suppressing the evidence must be reversed.
As reflected by the depositions (which constituted the sole evidence before the trial court) Arnold was an experienced investigator and had received reliable information of the defendant’s involvement with marijuana. The second investigator, Chief Petty Officer Kovalycsik, testified that the defendant voluntarily invited the investigators into the trailer while the defendant dressed and the record is devoid of any evidence to the contrary. The open trash bag was in plain view in the middle of the living room floor in which the investigators had been invited and the two plastic bags which Arnold recognized from his experience as containing marijuana were in plain view. No search was necessary.
If the initial entry into the trailer upon the invitation of the defendant was lawful and if the initial seizure of the two plastic bags in plain view was lawful then certainly the subsequent search and seizure following the written consent signed by the defendant, which in turned followed “the giving of his Miranda rights” was lawful.
The searches and seizures denounced by the Fourth Amendment to the United *7 States Constitution and by the Declaration of Rights of the Florida Constitution are “unreasonable” searches and seizures. (State v. Parnell, Fla.1969, 221 So.2d 129) Not all searches without a warrant are unreasonable. Voluntary consent has long been recognized as an exception. (Moss v. State, 1 Fla.App., 1971, 247 So.2d 327)
As stated by this Court in Powers v. State, 1 Fla.App., 1973, 271 So.2d 462:
“ * * * The principle of law is recognized in this jurisdiction that there may be a search without a seizure as well as a seizure without a search, and that where no search is required, a seizure of contraband without a warrant is not prohibited where the seized property is fully disclosed and open to the eye and hand without the necessity of a search therefor.” (at page 463)
As recited in State v. Clarke, 4 Fla.App., 1970, 242 So.2d 791:
“To observe that which is open to view is not generally considered a ‘search’. Miller v. United States, 5 Cir. 1966, 356 F.2d 63. Objects which fall within plain view of a police officer are subject to seizure and may be introduced into evidence. Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067. The major consideration in applying this rule is whether the observing officer had a right to be in the position to have that view. United States v. Davis, 5 Cir. 1970, 423 F.2d 974.” (At page 793)
It is apparent that in the case sub judice the investigators had a right to be in the position to have the view of the initial contraband inasmuch as the only evidence before the trial court demonstrated that the investigators were present in the trailer at the invitation of the defendant.
The Supreme Court of Florida aptly said in State v. Ashby, Fla.1971, 245 So.2d 225: “It is not a search for officers to see what is before them to be seen; they are not required by the Constitution to stop up their senses.”
We have no disagreement with French v. State, 3 Fla.App., 1967, 198 So.2d 668, and the many cases therein cited, holding that evidence which is located by the police as a result of information and leads obtained from illegally seized evidence, constitutes “the fruit of the poisonous tree” and is inadmissible in evidence. However, the facts in that case, and in the cases therein cited, all involved an initially illegal entry, search or seizure. Those are not the facts of the case sub judice.
Perez v. State, 2 Fla.App., 1972, 267 So.2d 33, cited by the appellee, has been reversed by the Supreme Court of Florida in State v. Perez, Fla.1973, 277 So.2d 778.
Appellee also cités Shipman v. State, 291 Ala. 484, 282 So.2d 700, decided by the Supreme Court of Alabama in 1973. The facts in that case are indeed remarkably similar to those sub judice: However, there is at least one very important distinguishing circumstance. In the case sub judice Arnold’s testimony reveals that he immediately recognized the plastic bags to be the kind often used for packeting marijuana. (See also State v. Jackson, 263 La. 849, 269 So.2d 465) In the Alabama case, on the other hand, the court founded its decision upon the finding that the officer did not recognize the contents in the cellophane packages at the time of the initial seizure but on the contrary had testified that he did not know what was in the packages and at one point indicated that it was powder.
We have not overlooked our own decision, in Bicking v. State, 293 So.2d 385, opinion filed April 30, 1974. However, that case has no application in the case sub judice because here the defendant himself furnished evidence of the validity of the warrantless search by filing with his motion to suppress the depositions which demonstrated such validity.
*8 The appellee correctly urges that on appeal every presumption is in favor of the correctness of the action of the trial court and that where there is a question of controverted fact the decision of the trial court should not be disturbed, citing Carroll v. State, 4 Fla.App., 1966, 186 So.2d 834. Certainly we have long recognized this laudable rule of appellate practice. However, in the case sub judice there are no controverted facts and we have before us exactly the same evidence in exactly the same form as was presented to the trial judge, to wit: two written depositions.
Accordingly, the order of suppression by the trial court is reversed and the cause is remanded for further proceedings consistent with the opinions herein expressed.
Reversed and remanded.
RAWLS, C. J., concurs.
McCORD, J., dissents.