## Commonwealth *v.* Campbell, Appellant.

Argued December 4, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

*Calvin S. Drayer, Jr.,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *J. David Bean,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 31, 1975:

Appellant, following a non-jury trial on October 16 and 17, 1973, was convicted of receiving stolen goods.[1] Prior to trial, a nolle prosequi was entered on a charge of larceny. After a denial of post-trial motions, he was sentenced to a term of one to five years. The only proper issue raised in this appeal is whether there was sufficient evidence to find that appellant knew the property possessed was stolen and hence to support this conviction. The only element at issue is appellant's guilty knowledge since it is not disputed that the property was stolen and appellant admits that he was in possession prior to his arrest. Because we do find sufficient evidence to support the essential element of guilty knowledge, we will affirm the conviction and the judgment of sentence.

The record, read in the light most favorable to the verdict winner, *Commonwealth v. Porter,* 229 Pa. Superior Ct. 314, 323 A.2d 128 (1974), reveals that on February 16, 1973, a powder blue 1964 Buick was stolen in Willow Grove, Pennsylvania. Appellant had no connection with its owner, Mr. Marvin D. Suer.

On March 23, 1973, exactly five weeks later and approximately six miles from the point where the car was stolen, a police officer observed appellant driving a 1964 blue Buick with a black top. Because of a police bulletin previously issued, it was believed this vehicle, repainted,

---

1. Occurring prior to June 6, 1973, controlled by The Penal Code, Act of June 24, 1939, P.L. 872, §817, *as amended* (18 P.S. §4817).

was the vehicle stolen from Mr. Suer on February 16, 1973. Appellant, kept under observation, drove the car several miles before parking this vehicle in the yard of a home owned by a Mr. Pelegie, who was never further identified,[2] and frequented by a Mr. Flowers who was with appellant at the time of his arrest.

After parking this vehicle, appellant entered a vehicle driven by Mr. Flowers. Some three or four miles later, appellant and Mr. Flowers were stopped by four or five police cars using red lights and sirens, although they stopped immediately without any attempt to escape this armada. The police, with at least one shot gun and one revolver at the ready, arrested appellant and apparently also arrested Mr. Flowers. The record never enlightens us as to the reasons for this display and since there is no issue on this appeal to which it is relevant, we pass it with reluctance as another of the wonderful little mysteries for which we shall never have an answer.[3]

The car bore a license plate which had been stolen.[4] The top of the car had been crudely painted black to resemble a vinyl roof, obviously at a time subsequent to February 16, 1973, and the lower court found it was painted in such a manner as to indicate the freshness of this paint job. The plate bearing the manufacturer's serial number was so loosely attached to the inside door post that the plate came off to the touch and rivet holes were revealed. This plate was found to have been stolen

---

2. Appellant testified that "Doodle", a name never further identified, lived at the home, and that Mr. Flowers told him he could park the car there.

3. Mr. McNulty, the Assistant District Attorney, in posing an objection did state: ". . . If he wants to get into that I will go back into the robbery question." We assume this refers to a question, contained in appellant's statement and denied by him, concerning the planning of a "hold-up."

4. Stolen March 5, 1973. No charges involving this theft are involved in this appeal nor were any such charges brought against this appellant.

at the same time and place as the license plate, and from the same person. Photographs of the ignition lock and the testimony of examining police officers would indicate, and the lower court found, that the old ignition lock had been punched out and replaced in a rather crude fashion. The appellant was in possession of only one key to the automobile. This key only operated the ignition lock on the car, and did so only with some obvious difficulty requiring forcing of the lock. This key did not operate to open the car's doors or trunk. The appellant was unable to produce any tangible evidence of ownership, such as a registration card. The dashboard was cut, apparently to make a place for a radio not designed for that car. The manufacturer's number on the plate mounted under the hood on the firewall had been obliterated. Appellant had on three or four prior occasions used the car, and had ample opportunity to examine the car. Indeed, in view of his own admission of an intent to purchase, it is reasonable to infer an examination of the car.

Appellant, in his own defense, testified that a Junior Mangeruca loaned him the car, that he had offered to purchase it for $150.00, and indeed that he had paid Mr. Mangeruca $40.00 on account. It was further claimed that the transaction had not been closed because Mr. Mangeruca had not produced the title, claiming the car was owned by an uncle from whom he had to secure the papers. Appellant saw nothing unusual about the car other than that it was old, even though he had driven it three or four times in the week before his arrest without an owner's card. He noticed nothing about the key, other than that it was hard to start, because he never locked the doors of the car and never had occasion to look in the trunk or under the hood.

Appellant argues that the offense of receiving stolen goods cannot be established absent proof of something more than mere possession. Appellant relies primarily on *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154

(1973), wherein defendant was found in possession of an automobile that had been stolen two and one-half weeks earlier. That vehicle also displayed license plates which had been stolen in an apparently unrelated theft. Furthermore that appellant could not produce an owner's card. On the basis of that evidence, the Pennsylvania Supreme Court reversed Mr. Henderson's conviction, stating: "The crime of receiving stolen goods requires proof that the appellant knew that the property possessed was stolen. Such knowledge on the part of the appellant is an essential element of the crime, in addition to the elements of appellant's possession of the property and the theft of the property prior to appellant's possession. The element of appellant's guilty knowledge may be established by direct evidence of knowledge or by circumstantial evidence from which it can be inferred that appellant had *reasonable cause to know* that the property was stolen. If from the circumstantial evidence, it can be inferred that the appellant had reasonable cause to know, a final inference can reasonably be made that he in fact *knew* that the property was stolen. It is difficult to enumerate every circumstance that would warrant a conclusion that the appellant had reason to know the property was stolen. Some of the significant circumstances can be the appellant's conduct; the appellant's relationship to the victim; the elapsed time between the appellant's possession and the theft; the situs of the theft and the situs of the possession; the kind of property; the quantity of the property; and the identifying characteristics of the property. See *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) ; *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972) ; *Commonwealth v. Owens,* 441 Pa. 318, 271 A.2d 230 (1970). Any or all of the above circumstances, and others not enumerated, taken sometimes alone and sometimes in relation to each other, may give rise to the final necessary inference that the appellant knew that the property possessed was stolen property." 451 Pa. at 455, 304 A.2d at 156.

The Pennsylvania Supreme Court further stated the distinction that must be made: "The significance of *Owens* and *Shaffer* is that possession of stolen property in and of itself is not sufficient evidence from which a factfinder may conclude guilt beyond a reasonable doubt. Possession alone of the stolen property without a weighing of the other circumstances requires guessing or speculation as to the defendant's knowledge that the property was stolen. If possession of the stolen property, without a consideration of any of the other circumstances, were sufficient for conviction, an innocent purchaser of stolen property could be convicted by possession alone. In this case, the appellee's evidence, other than establishing that the appellant was in possession of stolen property, contained very few facts about *other circumstances*. The kind of property was established—a car and a license plate. The time of possession was two and a half to three weeks after the theft. There is very little else to support an inference that the defendant had reason to know or knew that the car and plate were stolen." 451 Pa. at 456, 457, 304 A.2d at 157.

We believe that the evidence produced by the Commonwealth is sufficient circumstantial evidence of circumstances other than possession, from which it can be properly inferred that appellant *had reasonable cause to know* that the property was stolen. This appeal is governed by the rationale of *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727, *cert. denied,* 409 U.S. 867 (1972). It is distinguishable from *Henderson, supra,* by the additional factors previously discussed concerning the circumstances involving this car. The lower court quite properly found that the particular circumstances of this case remove it from the narrow framework of *Henderson.*

The judgment of sentence is affirmed.

JACOBS, J., dissents.

VAN DER VOORT, J., did not participate in the consideration or decision of this case.