J-A25022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LARRY F. SHAW | : | |
| | : | |
| Appellant | : | No. 267 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 6, 2020
In the Court of Common Pleas of Fayette County
Criminal Division at No(s):  CP-26-CR-0000287-2020

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED: DECEMBER 29, 2021**

Appellant, Larry F. Shaw, appeals from the judgment of sentence entered in the Fayette County Court of Common Pleas, following his jury trial convictions for receiving stolen property, persons not to possess firearms, flight to avoid apprehension, firearms not to be carried without a license, false reports to law enforcement, resisting arrest, and disorderly conduct.[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

> On December 2, 2019, the Pennsylvania State Police received information that [Appellant] was seen in the area of Evans Avenue and Connellsville Street in the City of Uniontown.  [Appellant] had an outstanding arrest warrant on that date.  Three Troopers went to the general area in an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3925, 6105, 5126, 6106, 4906, 5104, and 5503.

attempt to locate him. Trooper Wright had contacted an individual who he believed was … Appellant. However, when asked his identity, … Appellant gave the name John Smith. After Trooper DeGusipe arrived on the scene, he sent out a search for the name John Smith, the search came back with no record found. Trooper Carcella was the last trooper to arrive at the location where … Appellant had been stopped[.] Trooper Carcella had viewed … Appellant's driver's license photo and positively identified … Appellant. [A]ppellant immediately fled on foot with the Troopers in pursuit. After being pursued through several yards, Trooper [DeGusipe] observed … Appellant toss an item that he thought might be a gun. After … Appellant was apprehended, Trooper Carcella conducted a search and located a tan and silver pistol in the area of … Appellant. Prior to the pursuit, it had been drizzling rain. When the firearm was located, it was observed to be dry. The firearm was subsequently collected as evidence and found to be loaded. After verbally receiving his **Miranda**[2] warning, … Appellant admitted that the gun was his. The Greensburg Lab determined the gun was operational. Using the serial number on the firearm, the registered owner was located. At trial, the registered owner testified that the gun had been stolen during a burglary of his residence in October 2019. The parties stipulated that … Appellant is a person not to possess a firearm.

… Appellant testified that he never told the Trooper that the weapon was his and he denied possessing the weapon. Testimony was presented that … Appellant had a prior [*crimen*] *falsi* charge of Robbery.

(Trial Court Opinion, filed April 7, 2021, at unnumbered p. 2) (internal record citations omitted).

Procedurally, on July 6, 2020, a jury convicted Appellant of the above-mentioned crimes. The court sentenced Appellant that day to 6 to 12 years' imprisonment for the persons not to possess conviction and imposed no

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

- 2 -

further penalty for the remaining crimes.

On July 13, 2020, Appellant filed a *pro se* request for counsel to withdraw, alleging trial counsel's ineffectiveness. Because Appellant still had counsel of record, the court forwarded the motion to counsel consistent with Pa.R.Crim.P. 576(A)(4).[3] Appellant also submitted *pro se* letters to the Clerk of Courts on August 3, 2020, and February 1, 2021. In the August 3rd letter, Appellant expressly stated: "I want to file an appeal for the gun case they gave me 6-12 years for." (*Pro Se* Letter, 8/3/20, at 1). Appellant indicated that he had no access to computers because he was in quarantine for fourteen (14) days and asked how he could appeal. Appellant acknowledged that the appeal period was expiring soon.

The Clerk of Courts forwarded the letter to counsel per Rule 576(A)(4). The Clerk of Courts also responded on August 7, 2020, explaining to Appellant that he had to prepare a notice of appeal and the filing fees associated with doing so, unless Appellant applied for and was granted *in forma pauperis* ("IFP") status. The letter further told Appellant that all *pro se* filings would be

---

[3] ***See*** Pa.R.Crim.P. 576(A)(4) (stating: "In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt").

forwarded to counsel in accordance with Rule 576(A)(4), but that if Appellant filed a notice of appeal, Rule 576(A)(4) would not apply, and the court would docket the *pro se* notice of appeal.[4]

In the February 1st *pro se* letter, Appellant asked when the deadline was for filing a notice of appeal or to file a collateral relief petition. The Clerk of Courts responded the next day, stating it could not provide legal advice and directing Appellant to consult with his attorney or conduct research in the law library.

On February 25, 2021, counsel filed a "Notice of Appeal to the Superior Court, *Nunc Pro Tunc*" and IFP petition on Appellant's behalf. On March 8, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant filed a counseled Rule 1925(b) statement on March 24, 2021.

On March 25, 2021, this Court issued a rule to show cause why the appeal should not be quashed as untimely. Counsel filed a response on May 4, 2021, stating:

> Following [Appellant's] sentencing in the criminal trial below, we were unable to reach him due to COVID-19 restrictions and thus unable to obtain his signature in order to properly proceed on an appeal. Once I was able to reach [Appellant], I decided to sign off on the appeal documents without his signature because he had been sent to the State

---

[4] While hybrid representation is generally prohibited, the right to appeal is protected by our Constitution, therefore, courts must docket a *pro se* notice of appeal even if the appellant is represented by counsel. ***Commonwealth v. H. Williams***, 151 A.3d 621, 623 (Pa.Super. 2016).

Correctional Institute in Fayette County. As soon as possible thereafter, I filed the within appeal.

(Response to Rule to Show Cause, filed 5/4/21, at 1). On May 14, 2021, this Court discharged the rule to show cause and referred the issue to the merits panel.

Appellant raises two issues for our review:

Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant actually or constructively possessed a firearm?

Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant received, retained, or disposed of movable property of another?

(Appellant's Brief at 7).

Preliminarily, we must address the timeliness of Appellant's appeal. The timeliness of an appeal is a jurisdictional requisite. *Commonwealth v. Patterson*, 940 A.2d 493 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). A defendant has 30 days to file an appeal in this Court after entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). Time limitations for taking appeals are strictly construed and cannot be extended as a matter of grace. *Commonwealth v. Valentine*, 928 A.2d 346 (Pa.Super. 2007). Extension of the filing period is permitted only in extraordinary circumstances, such as fraud or a breakdown in the court's operation. *Commonwealth v. Braykovich*, 664 A.2d 133 (Pa.Super. 1995), *appeal denied*, 544 Pa. 622, 675 A.2d 1242 (1996).

Nevertheless, "[f]ailure of an appellant to take any step other than the

timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken." Pa.R.A.P. 902. ***See also*** Pa.R.A.P. 905(b) (requiring Clerk of Courts to "immediately transmit to the prothonotary of the appellate court named in the notice of appeal a copy of the notice of appeal"); ***Commonwealth v. C. Williams***, 630 Pa. 169, 179, 106 A.3d 583, 588-89 (2014) (holding Clerk of Courts is "obligated to accept and process notices of appeal upon receipt in accordance with the Rules of Appellate Procedure, notwithstanding any perceived defects therein").

Instantly, the court sentenced Appellant on July 6, 2020. On August 3, 2020, within the 30-day appeal period, Appellant submitted a *pro se* letter expressly stating that he wanted to appeal his sentence of 6 to 12 years' imprisonment in the "gun case." Although Appellant's *pro se* letter was not in the proper form (***see*** Pa.R.A.P. 904), the defects in form did not affect the validity of the appeal. ***See*** Pa.R.A.P. 902. ***See also Commonwealth v. Alaouie***, 837 A.2d 1190, 1192 (Pa.Super. 2003) (holding prothonotary had no authority to reject appellant's timely but defective notice of appeal). Additionally, the fact that Appellant was still represented by counsel when he submitted the *pro se* appeal letter did not prohibit the Clerk of Courts from docketing it. ***See H. Williams, supra***. Under these circumstances, we decline to quash the appeal and consider Appellant's August 3, 2020 *pro se*

letter expressing his intent to appeal a timely notice of appeal. Therefore, we need not consider whether the reasons proffered by counsel for the delay in filing the counseled notice of appeal constitute sufficient grounds for *nunc pro tunc* relief.

Turning to the merits of this case, our standard and scope of review are as follows:

> When examining a challenge to the sufficiency of the evidence:
>
>> The standard we apply…is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa.Super. 2011) (*en banc*), *appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations, quotation marks, and emphasis omitted).

In his first issue, Appellant argues that the Commonwealth failed to prove his possession of a firearm. Appellant asserts that Trooper Carcella admitted that he did not see Appellant with a gun. Appellant highlights that the Commonwealth did not introduce any evidence of Appellant's DNA or fingerprints on the gun. Appellant insists that Trooper Wright also admitted that he did not observe Appellant with a firearm. Appellant emphasizes that Trooper Wright testified that he did not lose sight of Appellant during the foot pursuit. Appellant reasons, "[w]here an eyewitness observes an entire event subject of a criminal investigation yet does not observe an essential act (here, that Appellant supposedly threw a firearm), it logically follows that the act never took place. Therefore, logic dictates that Appellant never possessed the firearm subject of this investigation." (Appellant's Brief at 15). Appellant further points out that Trooper DeGusipe testified that he observed Appellant reach into his waistband and discard an object that the trooper believed was a gun. In light of Trooper Wright's testimony that he never lost sight of Appellant, however, Appellant posits that Trooper Wright's testimony should

have carried greater weight than Trooper DeGusipe's testimony.[5]  Appellant

concludes the evidence was insufficient to sustain his conviction for persons

not to possess a firearm, and this Court must reverse his conviction and vacate

his judgment of sentence.  We disagree.

The Uniform Firearms Act provides, in relevant part, as follows:

> **§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a)  Offense defined.**—
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

Instantly, the trial court evaluated Appellant's first issue as follows:

> One Trooper testified that he observed … Appellant toss what he thought was a gun.  Another Trooper located the firearm in the area where the object was thrown.  While it was drizzling rain that evening, the Trooper testified that when he first observed the firearm, it was dry.  The gun was later determined to be operational and loaded with nine bullets.  While the evidence is circumstantial, as the trier of fact, the jury can believe all, part or none of the testimony of a witness.  In this case, the jury believed the Trooper and determined that … Appellant possessed the weapon.  The parties stipulated to the fact that … Appellant was a person

---

[5] To the extent that Appellant's issue might implicate the weight of the evidence, that challenge is waived where Appellant did not preserve that issue. *See* Pa.R.Crim.P. 607(A) (requiring appellant to raise challenge to weight of evidence in motion for new trial).

not to possess. …

(Trial Court Opinion at unnumbered pp. 3-4) (internal record citations omitted). Additionally, the jury was free to accept the testimony that Appellant **admitted** the gun was his (**see** N.T. Trial, 7/6/20, at 40), and to reject Appellant's testimony denying possession of the gun (**see id.** at 49). **See Orr, supra**. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conviction under Section 6105. **See id. See also** 18 Pa.C.S.A. § 6105. Therefore, Appellant's first issue merits no relief.

In his second issue, Appellant argues the Commonwealth presented insufficient evidence of his "guilty knowledge" to sustain his conviction for receiving stolen property. Appellant asserts that possession of stolen property is not by itself sufficient to establish the requisite guilty knowledge. Appellant contends that the Commonwealth presented only the testimony of Jerome Gianopolus, the registered owner of the allegedly stolen firearm. Appellant insists, however, that the Commonwealth failed to present any evidence, whether direct or circumstantial, that Appellant knew or should have known that the firearm was stolen. Appellant concludes the evidence was insufficient to sustain his conviction for receiving stolen property, and this Court must reverse his conviction and vacate the judgment of sentence. We disagree.

The Crimes Code defines the offense of receiving stolen property as follows:

**§ 3925. Receiving stolen property**

**(a) Offense defined.—**A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with the intent to restore it to the owner.

18 Pa.C.S.A. § 3925(a). "[T]o establish the *mens rea* element of the crime of receiving stolen property, the Commonwealth must prove that the accused possessed property with "guilty knowledge," *i.e.*, knowing that it has been stolen, or believing that it has probably been stolen." ***Commonwealth v. Newton***, 994 A.2d 1127, 1132-33 (Pa.Super. 2010). "A person 'knows' that goods are stolen if he is 'aware' of that fact." ***Id.*** at 1132. Regarding the latter part of the test, "it is clear that [the statute] is designed to criminalize situations where the defendant does not know for certain that the goods are stolen, but nevertheless has: (1) considered the possibility that the goods are stolen and (2) concluded that the answer is at the very least, 'probably.'" ***Id.***

The Commonwealth may establish a defendant's "guilty knowledge" by wholly circumstantial evidence. ***Id.*** "Often, intent cannot be proven directly but must be inferred from examination of the facts and circumstances of the case." ***Id.*** In evaluating "guilty knowledge," this Court has explained:

A permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing upon an accused's right of due process or his right against self-incrimination, **as well as other circumstances, such as the accused's conduct at the time of arrest**. Nonetheless, the mere possession of stolen property is insufficient to prove guilty knowledge, and the

Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen. This additional evidence can include the nature of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. Further, whether the property has alterations indicative of being stolen can be used to establish guilty knowledge. Finally, even if the accused offers an explanation for his possession of stolen property, the trier of fact may consider the possession as unexplained if it deems the explanation unsatisfactory.

*Commonwealth v. Parker*, 847 A.2d 745, 751 (Pa.Super. 2004) (emphasis added) (quoting *Commonwealth v. Foreman*, 797 A.2d 1005, 1012-13 (Pa.Super. 2002)) (internal citations omitted). "Any or all of the above circumstances, and others not enumerated, taken sometimes alone and sometimes in relation to each other, may give rise to the final necessary inference that the [defendant] knew that the property possessed was stolen property." *Commonwealth v. Campbell*, 334 A.2d 735, 738 (Pa.Super. 1975). *See, e.g., Commonwealth v. Gomez*, 224 A.3d 1095, 1100 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 236 A.3d 1053 (2020) (holding Commonwealth presented sufficient evidence of appellant's guilty knowledge for receiving stolen property conviction where appellant refused to comply with officers' repeated requests for cooperation during routine traffic stop, based on appellant's status as previously convicted felon he could not lawfully purchase or possess firearm, and expert testimony established that it is very common for drug dealers to obtain stolen firearms illicitly; these

circumstances are sufficient to enable fact-finder to infer that defendant believed firearms were probably stolen).

Significantly, when the Commonwealth "establishes the recency of the theft, we have upheld convictions for receiving stolen property." *Commonwealth v. Robinson*, 128 A.3d 261, 268 (Pa.Super. 2015) (*en banc*). "Whether possession is recent, and how recent it is, are normally questions of fact for the trier of fact." *Commonwealth v. Hogan*, 468 A.2d 493, 497-98 (Pa.Super. 1983) (*en banc*) (explaining that whether appellant's possession of automobile 28 days after automobile was stolen constitutes "recent" for purposes of guilty knowledge inference is question for fact-finder; "We cannot say as a matter of law a period of four weeks was so great as to render impermissible the inference of guilty knowledge…"). *Compare Commonwealth v. Stover*, 436 A.2d 232, 233-34 (Pa.Super. 1981) (holding possession 37 days after theft of automobile was not recent, **and no other evidence linked defendant to theft**). "[W]hether possession of goods is unexplained is also a question of fact." *Hogan, supra* at 496.

Instantly, the Commonwealth presented testimony from Jerome Gianopolus. Mr. Gianopolus testified that his gun was stolen in October 2019, and that he reported it as stolen on the night his home was burglarized. (N.T. Trial at 16-17). Mr. Gianopolus also testified that he lives in Markleysburg,

Pennsylvania.[6]  Additionally, the Commonwealth presented evidence that Appellant initially identified himself as John Smith when the officers confronted him, and when police realized who Appellant was, Appellant fled the scene. (*Id.* at 21-22).  Appellant testified in his own defense, but he did not offer any explanation for possession of the stolen firearm because Appellant denied possessing a firearm on the night in question.  (*Id.* at 49).  Appellant also denied that he had ever admitted to police on the night of his arrest that the gun was his.  (*Id.*)

Here, the jury was free to consider the recency of Appellant's possession of the firearm (less than two months after it was stolen) and Appellant's unexplained possession of the firearm (because Appellant denied ever possessing it at all) as circumstantial evidence of Appellant's guilty knowledge. *See Hogan, supra*.  Even if Appellant's possession of the stolen firearm does not qualify as "recent" (*see Stover, supra*), the Commonwealth presented additional circumstantial evidence to establish Appellant's guilty knowledge, where Appellant gave a false name to police and then fled.  Although Appellant testified that he ran because of the active warrant for his arrest (*see* N.T. Trial at 49), "[t]he fact-finder need not choose between Appellant's several crimes to determine whether one or more would cause Appellant's obstinate behavior. Rather, based on his conduct, the fact-finder was free to infer that Appellant

---

[6]  Markleysburg, Pennsylvania is approximately 18 miles away from Uniontown, Pennsylvania, where Appellant was apprehended.

knew or believed that the firearms were probably stolen." ***Gomez, supra*** at 1100.

Under these circumstances, the Commonwealth presented sufficient circumstantial evidence of Appellant's guilty knowledge. ***See id.***; ***Campbell, supra***. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conviction for receiving stolen property. ***See Orr, supra***. ***See also*** 18 Pa.C.S.A. § 3925. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/29/2021